UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARIA R.,

      **Plaintiff,**

   v.

KILOLO KIJAKAZI,
**Acting Commissioner of Social Security,**

      **Defendant.**

Case No. 2:20-cv-10264
Magistrate Judge Norah McCann King

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Maria R. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application.[1] After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure and Local Civil Rule 9.1(f). For the reasons that follow, the Court reverses the Commissioner's decision and remands the action for further proceedings.

**I.**    **PROCEDURAL HISTORY**

On April 6, 2017, Plaintiff filed her application for benefits, alleging that she has been disabled since November 4, 2016. R. 69, 84, 212–20. The application was denied initially and upon reconsideration. R. 87–91, 93–95. Plaintiff sought a *de novo* hearing before an

---

[1] Kilolo Kijakazi, the Acting Commissioner of Social Security, is substituted as Defendant in her official capacity. *See* Fed. R. Civ. P. 25(d).

1

administrative law judge. R. 96–110. Administrative Law Judge ("ALJ") Peter Lee held a hearing on July 10, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 35–56. In a decision dated August 15, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 4, 2016, her alleged disability onset date, through the date of that decision. R. 12–26. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 15, 2020. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On February 17, 2021, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 12.[2] On the same day, the case was reassigned to the undersigned. ECF No. 13. The matter is now ripe for disposition.

## II.    LEGAL STANDARD

### A.    Standard of Review

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this

---

[2] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

2

> Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g.*, *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting

3

*Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

4

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.     Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).  If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled.  Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the

impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 49 years old on her alleged disability onset date. R. 25. She met the insured status requirements of the Social Security Act through December 31, 2021. R. 14. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between November 4, 2016, her alleged disability onset date, and the date of the ALJ's decision. *Id.*

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: arthritis; carpal tunnel syndrome; osteopenia; bipolar disorder; and posttraumatic stress disorder ("PTSD"). *Id.* The ALJ also found that Plaintiff's diagnosed melanoma, chronic urinary tract infections, and history of kidney stones were not severe impairments. R. 15.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 15–18.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations. R. 18–25. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a field service supervisor, human service specialist, case worker, and teacher's aide. R. 24–25.

At step five, the ALJ found that a significant number of jobs—*i.e.*, approximately 30,000 jobs as a micro film mounter; approximately 90,000 jobs as an inspector; approximately 30,000 jobs as an assembler—existed in the national economy and could be performed by an individual with Plaintiff's vocational profile and RFC. R. 25–26. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from November 4, 2016, her alleged disability onset date, through the date of the decision. R. 26.

Plaintiff disagrees with the ALJ's findings at steps four and five and asks that the decision of the Commissioner be reversed and remanded for further proceedings. *Plaintiff's Brief,* ECF No. 17; *Plaintiff's Reply Brief*, ECF No. 23. The Acting Commissioner takes the position that the decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief Pursuant to Local Civil Rule 9.1,* ECF No. 22.

## IV. SUMMARY OF RELEVANT MEDICAL EVIDENCE

On January 14, 2019, Avanente Tamagnini, Ph.D., Plaintiff's treating psychologist, completed a three-page, check-the-box and fill-in-the-blank form addressing Plaintiff's ability to perform unskilled work-related mental activities, R. 1257–59, using the following scale: "Unlimited or very good"; "limited but satisfactory"; "seriously limited, but not precluded," which means that Plaintiff's "ability to function in this area is seriously limited and less than satisfactory, but not precluded. This is a substantial loss of ability to perform the work-related activity"; "unable to meet competitive standards," which means that Plaintiff "cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting"; and "no useful ability to function," which is "an extreme limitation" that means that Plaintiff "cannot perform this activity in a regular work setting." R. 1257. According to Dr. Tamagnini, Plaintiff had limited, but satisfactory, abilities to maintain regular attendance, be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; maintain socially appropriate behavior; and adhere to basic standards of neatness and cleanliness. R. 1257–58. Plaintiff's abilities to remember work-like procedures; understand and remember very short and simple instructions; carry out very short

and simple instructions; ask simple questions or request assistance; understand and remember detailed instructions; carry out detailed instructions; set realistic goals or make plans independently of others; and interact appropriately with the general public were seriously limited but not precluded. *Id*. Dr. Tamagnini also opined that Plaintiff was unable to meet competitive standards in her abilities to maintain attention for two-hour segments; work in coordination with or proximity to others without being unduly distracted; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; deal with normal work stress; be aware of normal hazards and take appropriate precautions; deal with stress of semiskilled and skilled work; travel in unfamiliar places; and use public transportation. *Id*. Dr. Tamagnini explained that Plaintiff "is in constant pain and has difficulties doing chores." R. 1258. He went on to opine that Plaintiff would be absent from work more than four days per month due to her impairments or treatment. *Id*. Dr. Tamagnini also opined that Plaintiff could mange benefits in her own best interest and that she was credible. R. 1258–59.

## V.     DISCUSSION

Plaintiff argues, *inter alia*, that the ALJ erred in evaluating Dr. Tamagnini's opinions. *Plaintiff's Brief*, ECF No. 17, pp. 21–33; *Plaintiff's Reply Brief*, ECF No. 23, pp. 3–5. This Court agrees.

The ALJ must evaluate all record evidence in making a disability determination. *Plummer,* 186 F.3d at 433; *Cotter,* 642 F.2d at 704. The ALJ's decision must include "a clear

and satisfactory explication of the basis on which it rests" sufficient to enable a reviewing court "to perform its statutory function of judicial review." *Cotter*, 642 F.2d at 704–05. Specifically, the ALJ must discuss the evidence that supports the decision, the evidence that the ALJ rejected, and explain why the ALJ accepted some evidence but rejected other evidence. *Id*. at 705–06; *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 505–06 (3d Cir. 2009); *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001) ("Although we do not expect the ALJ to make reference to every relevant treatment note in a case . . . we do expect the ALJ, as the factfinder, to consider and evaluate the medical evidence in the record consistent with his responsibilities under the regulations and case law."). Without this explanation, "the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705; *see also Burnett,* 220 F.3d at 121 (citing *Cotter*, 642 F.2d at 705).

For claims filed after March 27, 2017,[3] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other

---

[3] As previously noted, Plaintiff's claim was filed on April 6, 2017.

evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2).

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive he find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). "Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency' factors for a medical source's opinion. . . . The ALJ may—but is not required to—explain how he considered the remaining factors." *Michelle K. v. Comm'r of Soc. Sec*., No. 1:19-CV-01567, 2021 WL 1044262, at *4 (W.D.N.Y. Mar. 19, 2021) (citing 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2)).

At step four of the sequential evaluation process in this case, the ALJ found that Plaintiff had the RFC to perform light work subject to certain additional limitations as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can never climb ropes, ladders, or scaffolds. She can occasionally climb stairs and ramps. The claimant can never crawl, but she can occasionally kneel, stoop, and crouch and frequently balance. She can occasionally reach overhead and frequently reach in all other directions. She can frequently finger and handle. The claimant can never be exposed to unprotected heights or hazardous machinery. She can occasionally have exposure to extremes in environmental conditions. The claimant is able to perform simple and routine tasks with occasional contact with supervisors, co-workers, and the public.

R. 18. In reaching this determination, the ALJ found, *inter alia*, that Dr. Tamagnini's opinion was "not persuasive[,]" reasoning as follows:

> In January 2019, Dr. Tamagnini, treating psychologist, assessed that the claimant was unable to meet the competitive standards of work for maintaining attention for two hour segments, working in coordination or proximity to others without being distracted, making simple work related decisions, completing a normal workday or workweek without interference from psychologically based symptoms, performing at a consistent pace without an unreasonable number and length of rest periods, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers, responding appropriately to changes in a routine works setting, dealing with normal work stress, being aware of hazards and taking appropriate precautions, dealing with stress of semi-skilled and skilled work, traveling to unfamiliar places, and using public transportation (Ex. 28F, p. 1-2). Dr. Tamagnini stated claimant was seriously limited, but not precluded, in her ability to remember work-like procedures, understand and remembering very short and simple instructions, carrying our very short and simple instructions, ask simple questions and request assistance, understand and remember detailed instructions, carry out detailed instructions, set realistic goals and make plans independently of others, and interact appropriately with the general public (*Id.*). Dr. Tamagnini estimated that the claimant would be absent from work more than 4 days per month (28F, p. 2). *This opinion is not persuasive because it is not supported by the evidence as a whole.*

R. 23–24 (emphasis added).

Plaintiff challenges the ALJ's summary conclusion that Dr. Tamagnini's opinion was "not persuasive" without any explanation. *Plaintiff's Brief*, ECF No. 17, p. 27. Plaintiff points

out that the ALJ "identified no inconsistency between the opinion and the record, and did not indicate what was 'not supported' given the volume of treatment notes provided by Dr. Tamagnini[,]" thus rendering impossible any meaningful review by this Court. *Id*. To the contrary, Plaintiff argues, Dr. Tamagnini's opinion is well-supported by the mental health treatment notes in the record, most of which were generated by Dr. Tamagnini. For example, Plaintiff notes, treatment notes refer to Plaintiff's anger, hostility, and irritability upon examination; his anxious or depressed presentation; his vigilance upon examination; his noted "severe" level of distress and impairment; his difficulty in concentrating because of worry and confusion when anxious; his avoidance of situations because of anxiety; his mood swings and manic symptoms; and the prescription of psychiatric medication (including antipsychotic drugs), such as Lamictal, Seroquel, Trazadone, Abilify, and Klonopin. *Id*. at 27–29 (citing to record evidence). Plaintiff also contends that the ALJ's summary of the record evidence makes it difficult to trace the ALJ's reasoning and reflects the ALJ's own lay analysis of the record. *Id*. at 29–30 (citing R. 20). In short, Plaintiff argues, the ALJ's failure to explain his consideration of Dr. Tamagnini's opinions requires remand. *Id*. at 31–33.

On the other hand, the Acting Commissioner contends that the ALJ properly found that Dr. Tamagnini's extreme opinions were "not persuasive" because Plaintiff's "work history is compelling evidence that her mental impairments did not limit her to the extent that she now suggests." In support, the Acting Commissioner points to evidence that Plaintiff previously worked a highly skilled job, previously represented that her symptoms were because of pain from her rheumatoid arthritis, and did not allege that her depression and anxiety created any independent functional limitations; that the state agency reviewing psychologists found no functional limitations stemming from mental impairments, which they found to be non-severe;

and that Dr. Tamagnini's opinions were in simply checkbox form, which provides no support for those opinions.  *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 22, pp. 15−20. In reply, Plaintiff characterizes the Acting Commissioner's arguments as nothing more than impermissible *post hoc* rationalization. *Plaintiff's Reply Brief*, ECF No. 23, pp. 3−5.

Plaintiff's arguments are well taken. As Plaintiff points out, the ALJ simply concluded that Dr. Tamagnini's opinions were not persuasive because they were "not supported by the evidence as a whole." R. 24. The ALJ provided no citation to the record, or other explanation, to support this conclusion. *Id*. Moreover, the ALJ failed to explain how he considered the required factors of supportability and consistency. *Id*. Although the ALJ detailed evidence relating to Plaintiff's mental impairments, it is not apparent from this recitation of the longitudinal record why the record does not, "as a whole[,]" support Dr. Tamagnini's opinions. R. 19−21. For example, the ALJ acknowledged a history of suicide attempts, periods of impulsive behavior, depression with suicidal ideation, inability to sleep for days at a time, anger interfering with her ability to socialize, slice marks on Plaintiff's arms from cutting herself, mental status examinations that "were sometimes normal and other times, she exhibited a sad, depressed, anxious, and worried mood and fair attention and concentration," and the consulting psychologist's observation that Plaintiff had "extreme circles and bags under her eyes, appeared extremely fatigued, often laughed and giggled, and appeared quite hyperactive and her mental status examination was normal other than her reported mood and some impairment of her memory[.]" *Id*. Yet, the ALJ did not explain−nor is it apparent to the Court−how this evidence is inconsistent with Dr. Tamagnini's opinions. *Id*.

"The new regulations promulgated by the Social Security Administration set forth a 'minimum level of articulation' to be provided in determinations and decisions, in order to

14

'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, No. 5:20-CV-495, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 FR 5844-01, and citing 20 C.F.R. §§ 404.1520c(b) and 416.920c(b)). As this Court's summary of the evidence set forth above makes clear, "the ALJ's failure in this case to meet these minimum levels of articulation frustrates this court's ability to determine whether [his] disability determination was supported by substantial evidence." *Id.*; *see also Brownsberger v. Kizakazi*, No. 3:20-CV-01426, 2022 WL 178819, at *6–7 (M.D. Pa. Jan. 18, 2022) (finding that substantial evidence did not support the ALJ's assessment of medical opinions where the ALJ "makes no effort to compare or support their opinions with the record. . . . The ALJ does not provide any citations to specific evidence on the record to explain his reasoning and does not explain how he evaluated the opinions regarding the supportability and consistency factors"); *Jaleesa H. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01180 EAW, 2022 WL 174337, at *5–6 (W.D.N.Y. Jan. 18, 2022) (stating that, under the new regulations, the ALJ "is still required to articulate how he considered the medical opinion, including explaining how he considered the 'supportability' and 'consistency' factors" and that the ALJ in that case "did not explain anything—instead, he made a conclusory statement that Dr. Fabiano's opinion was 'generally consistent and supportive,' without any explanation of how he assessed the opinion in connection with the consistency and supportability factors which, as explained above, is required by the new regulations"); *Nicole L. v. Kijakazi*, No. 6:20-CV-01576, 2022 WL 160274, at *8 (N.D.N.Y. Jan. 18, 2022) ("But without some clear discussion of the supportability factor the Court is left to guess at the ALJ's reasoning, which frustrates meaningful review.").

Furthermore, the Court cannot conclude that the ALJ's failure to explain his evaluation of Dr. Tamagnini's opinions is harmless. This is particularly so because Dr. Tamagnini opined that

Plaintiff was unable to meet competitive standards in performing many of the mental demands of unskilled work and the RFC does not reflect these limitations. R. 18, 1257–58.

Finally, the Court rejects the Acting Commissioner's argument that the record contains evidence or reasons sufficient to support the ALJ's decision to discount Dr. Tamagnini's opinions. *Defendant's Brief Pursuant to Local Civil Rule 9.1*, ECF No. 22, pp. 14–20. The ALJ did not rely on this evidence or rationales in considering Dr. Tamagnini's opinions. R. 23–24. The Acting Commissioner's *post hoc* rationalization in this regard must therefore be rejected. *See Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Human Servs.*, 730 F.3d 291, 305 (3d Cir. 2013) ("Our review must also be based on 'the administrative record [that was] already in existence' before the agency, not 'some new record made initially in the reviewing court' or 'post-hoc rationalizations' made after the disputed action.") (quoting *Rite Aid of Pa., Inc. v. Houstoun*, 171 F.3d 842, 851 (3d Cir. 1999)); *Fargnoli*, 247 F.3d at 44 n.7 (3d Cir. 2001) (stating that a district court should not substitute its own independent analysis for reasoning not mentioned by the ALJ) (citations omitted); *Rhodes v. Comm'r of Soc. Sec.*, No. CV 18-0678, 2019 WL 1042532, at *6 (D.N.J. Mar. 5, 2019) ("The Court is only permitted to consider the ALJ's decision based on the rationale contained in that decision; the Court is not to consider hypothetical rationales, which may justify the ALJ's decision, but which were not in fact underlying the opinion in question.") (citation omitted).

This Court therefore concludes that remand of the matter for further consideration of these issues is appropriate.[4] Moreover, remand is warranted even if, upon further examination of

---

[4] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Dr. Tamagnini's opinion and the RFC determination, the Court those claims.

Dr. Tamagnini's opinions and the RFC determination, the ALJ again finds that Plaintiff is not entitled to benefits. *Cf. Zuschlag v. Comm'r of Soc. Sec. Admin.*, No. 18-CV-1949, 2020 WL 5525578, at *8 (D.N.J. Sept. 15, 2020) ("On remand, the ALJ may reach the same conclusion, but it must be based on a proper foundation."); *Jiminez v. Comm'r of Soc. Sec.*, No. CV 19-12662, 2020 WL 5105232, at *4 (D.N.J. Aug. 28, 2020) ("Once more, the ALJ did not provide an adequate explanation that would enable meaningful review, and the Court once more cannot determine what role lay speculation played in the ALJ's rejection of this detailed functional assessment from Dr. Marks."); *Cassidy v. Colvin*, No. 2:13-1203, 2014 WL 2041734, at *10 n.3 (W.D. Pa. May 16, 2014) ("Nevertheless, that the ALJ may have misinterpreted or misunderstood Dr. Kaplan's findings with regard to Plaintiff's postural activities does not absolve her of her error. Rather, it highlights the need for an ALJ to fully explain her findings. Otherwise, the district court is left to engage in this sort of speculation about how an ALJ arrived at her decision.").

## VI. CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Date: March 10, 2022            *s/Norah McCann King*
                                NORAH McCANN KING
                                UNITED STATES MAGISTRATE JUDGE